THE UNITED STATES COURT OF APPEAL FOR THE FEDERAL CIRCUIT IS NOW OPEN AND IN SESSION. GOD SAVE THE UNITED STATES AND THIS HONORABLE COURT. Thank you. Be seated. Good morning, everyone. The first argued case this morning is number 13-1187, McLean-Fogg Company v. United States. Mr. Leonard. Your Honors, my name is Mark Leonard. I am arguing on behalf of joint appellants who are U.S. importers. Also with me at the table is Craig Lewis from Hogan-Lovett. In our appeal, we have challenged the 137 percent preliminary total adverse facts available rate as it has been applied, as both the preliminary all-others rate and as the final all-others rate. The decisive point on the statutory construction issue, and the one I would like to address first, is whether voluntary respondents are unambiguously included in the phrase exporters and producers individually investigated. This is important as it relates to the general rule and the exception for calculating the all-others rate. That provision states that commerce must set the all-others rate equal to the weighted average of the individual account available subsidy rates calculated for exporters and producers individually investigated, and specifically excludes any such rates that are zero, de minimis, or based entirely upon adverse facts available. The exception... Isn't the basic question here whether your clients were, quote, individually investigated as contemplated by the statute? That's right. Absolutely. And this is important because the exception to the provision is only available if the rates of all exporters and producers individually investigated are zero, de minimis. But I think, isn't the argument on the other side that whatever has happened to your clients, they weren't, quote, individually investigated as contemplated by the statute? They were investigated on a parallel track or someplace else. Yes, and as a clarification, our clients are the U.S. importers, and the parties for which this, you know, the Department of Commerce argues was a parallel track were the voluntary respondents in the investigation. Yeah. And in this regard, we believe that it cannot be seriously disputed that voluntary respondents are included in... Well, you're arguing that this rate was wrongly computed because the rates that were assigned to the volunteers were excluded under the regulation. Correct. And you have to be arguing that the regulation is invalid. Because the statute is unambiguous, yes. The statute unambiguously includes voluntary respondents in that phrase, exporters and producers. It doesn't say voluntary respondents. No, it doesn't. But there are two reasons why the statute, or at least two that I want to address today, why the statute is unambiguous. The first is plain language, where this court starts when it addresses statutory construction issues. Which term is being claimed to be ambiguous and presents a problem for you? The Department of Commerce argues that the term individually investigated is ambiguous. But in a dictionary, the definition of the word individually is separate and of investigated as examined. And that's exactly what happens here with both voluntary and mandatory respondents. But key is the context. But what are you asking for, that the rate of the voluntary respondents should have been the rate for all respondents? Yes, the voluntary rates should have been the basis for calculating the all-others rate. Should have been included in a calculation. Right. You know, where the all-others rate is required to be the basis of the rates of exporters and producers individually investigated. The voluntary respondents were individually investigated and should have been the basis of the all-others rate. Now, the exception to the all-others rate... And the AFA rate would be, those would be excluded, right? It would be excluded because it was an adverse tax available rate. So you'd do a weighted average of these two rates. Correct. Now, the exception to the general rule is only available if the rates, and I quote in the statute, if the rates of all exporters and producers individually investigated are zero de minimis or based upon facts otherwise available. And so here, if the voluntary respondents are individually investigated, then Commerce cannot resort to the exception when those calculated rates are on the record. But it looks from the legislative history as if Congress foresaw that those respondents with the most favorable position would volunteer, and they took the next step. Well, there are two reasons why that should not be part of the decision. Number one is that that legislative history is the regulatory history created by the Department of Commerce. The second is that any policy concerns about self-selection do not identify ambiguities in the statute and so are irrelevant for purposes of a statutory construction. What about if you look at the statute and say that Congress envisioned that the all others rate would be based on a CBD rate only for individually selected respondents? And in this case, those individually selected or the individually investigated or individually selected, these are mandatory respondents we're talking about and no other type of respondent. Well, the statute or Commerce is required when… In this case, there's other respondents involved, right? And these are the ones that were not selected at all because of the structure of the market. The statute says that voluntary respondents are not initially selected for individual examination. But in fact, they are selected. In this case, if 100 of the non-mandatory respondents had sought voluntary status or voluntary treatment, Commerce would have had to select among those 100 the respondents that it would have examined individually. Now, if we adopt your interpretation and there's a situation such as this where you have mandatory respondents that really comprise the bulk of the exports to the United States, then you have two respondents who respond, voluntary respondents, and they get 8% and 9% margins. And Commerce looks at that and says, if we do that, we're going to allow respondents to gain the system. We're going to allow respondents to not choose to participate. Then maybe two or three will choose, with very low rates, will participate. And we'll end up having to impose a COD duty that is not representative of the entire picture. I mean, that's what we're looking at as well, correct? Well, that argument is invalid for three reasons. First is that, as I mentioned earlier, the policy concerns do not identify ambiguities in the statute. Second, in this case, what we're dealing with are… But why not? Isn't the statute trying to arrange the procedure in a way to arrive at a just decision, a just determination? Yes, and it does by requiring the use of calculated rates that are based upon data that is submitted to the Department of Commerce and verified by the Department of Commerce. You have… Well, you know, with mandatory rates and voluntary rates, both of them fit this mold where it's actual commercial reality presented by… Commerce doesn't have to accept a voluntary respondent's participation, do they? It does if it has the resources available. In this case, all three mandatory respondents failed to respond. And the Department of Commerce had identified that it had the resources to examine three companies. And so when those mandatory respondents didn't respond, they took the two voluntary respondents, and this is as required by 1677… I was just sort of curious in how Commerce decides to go about whether to accept or not accept a voluntary respondent's offer. It's an offer, isn't it, and then… It is an offer, and they're required to take them if they have the resources available. So I'm just wondering if the government… What does the government know about the voluntary at the time the voluntary offers? In this particular case, because the Department… I'm trying to address Judge Rayna's concern, which I think is legitimate, that I was wondering whether Commerce had within its authority to sort of say, well, if we accept these two people, it's going to be perhaps an unrealistic assessment. Sure. Well, Commerce does set its own methodology for selecting voluntary respondents and typically takes the first that ask. But in this case, one of the voluntary respondents was sufficiently large to be selected as a mandatory respondent in the parallel anti-dumping case. I would like to, if I may… But isn't it kind of recognized that a voluntary respondent will step forward only if they know they're going to get de minimis, zero, or very low rates? Not necessarily. In this case, the voluntary respondent stepped forward when they knew that the mandatories weren't going to cooperate, and they were looking at an adverse facts available rate, possibly. But you won't… It's unreasonable to expect a voluntary respondent to appear if they know that they're going to receive a large rate. I'm sorry, if they're going to receive a… A large rate. Internal investigations leading up to the decision whether to voluntarily appear or not, if those internal investigations show that if they do volunteer, do appear, they're going to receive a large rate, 100 percent, 70 percent, it's unlikely that they'll volunteer, correct? Isn't it the incentive for them to sit back and see what's going to happen? It's not necessarily unreasonable, given the context of what the Department of Commerce has done with adverse facts available rates, where rates are initially, in this case, almost 400 percent. Voluntary respondents, in my own experience, want to control their own case and typically have a rate that may be higher or lower, but it's their own rate. But if there had been no volunteers here, and if you didn't include it, then they basically have to use the AFA rate for the all others. I'm sorry. I mean, basically, in a situation where there's no volunteers coming forward and the mandatories don't cooperate, the AFA rate's going to control the all others rate. Typically, that is the case. It's still limited by the word reasonable in the all others statement. Let me ask one other question. The policy considerations we've been talking about, gaming the system and whatnot, are reflected in the history of the regulation. My understanding was that there's nothing in the statute. When the statute was enacted, my understanding was that there was no legislative history that told me much about individually investigated. That is correct, except for in the Statement of Administrative Action, it does state that commerce shall endeavor to investigate voluntary respondents. That's all there is. Let's hear from the government, and we'll save you rebuttal time. Thank you. Good morning, Your Honors. May it please the Court. The statutory scheme, when read as a whole, does not support the appellant's argument that the statute unambiguously requires the inclusion of voluntary respondent rates within the calculation of the all others rates. In the Chevron framework, the first step of Chevron asks, has Congress spoken to the precise issue? And in this case, in this statute, Congress did not speak precisely to the issue of whether voluntary rates, did not explicitly state that voluntary rates should be included within the all others rate. But when we look at the statutory scheme as a whole, there's at least some indication that they should be excluded. But isn't the real question whether this procedure is reasonable in conditions such as this? If not, I can't see where Chevron controls. The question that the appellants have raised in this appeal is whether the statute unambiguously requires the inclusion of voluntary respondent rates in the all others rates. And their position is that the statute unambiguously requires such a thing. If the court finds that that's not the case, then we proceed to whether Commerce's interpretation and Commerce's filling the gap is a reasonable... Where is the ambiguity in the phrase individually investigated? Well, there's two responses to that, you know what I mean? The first is that that language is not defined by statute. So Congress didn't give us a definition of that. I know, but when you do statutory construction, you know, you look at the statute to say is it ambiguous? Is individually investigated ambiguous? Well, you certainly start with that question, but the court also has to look at when determining whether... But what in the statute tells me that individually investigated is an ambiguous term? And it seemed to me that if indeed these voluntary respondents were, quote, individually investigated, then the pieces of the statute fall together because a voluntary respondent or Commerce is required to give a rate to them, required to examine them. The SAA treats examining and investigating as the same thing. The rules are that if someone comes in and asks to be voluntarily included, they're going to be treated exactly like a mandatory. The law requires them to be... Commerce has to treat them the same. And so are they individually? Yes, they got a rate, had their name on it. Right? If they weren't individually investigated, they would have had to have been given an all others rate. Correct? Under the statute, isn't that correct? I think if the court's using... Yes or no? No, no, because what we're looking at is Commerce is required, and maybe I can step back. The first step that Commerce has to do is to calculate mandatory respondent rates. And ideally... The statute says that if you're individually investigated, you either get a rate or you get... If you're not, you get an all others rate. If you're not individually investigated, you get an all others rate. Right. I'm looking at CB11. This is an argument that your adversary makes here, and they say, well, look at this situation. These volunteers got their own rate. They didn't get an all others rate, which means they have to have been investigated. There's certainly some appeal to that interpretation. I'm trying to deal with exact words of the statute. And our position is that in order to glean that definition, the court has to look at the statutory scheme as a whole. What in the statute tells me that the words individually investigated are ambiguous? I think what we look at first, when the statute 1677F-1, which tells Commerce how to calculate the mandatory respondent rates, that statute directs Commerce, you must use the mandatory respondent rates in the calculation of the all others rates. So we know unambiguously that that is required. Yes, if they were cooperating, of course. But if... The mandatories get excluded when they don't cooperate, and then they get an AFA rate. But the statute as a whole is totally consistent. Yes, if you are a mandatory and you cooperate and you get a rate, of course you have to put that in the mix. Because the AFA rate requires everybody who got an individual rate has to be included in the AFA. The mandatory rates... Excluded are the AFA's. So I just, I ask you again, I'm just curious because it seemed to me that individually investigated is pretty clear. And that since the SAA treats examined throughout as equivalent to investigated, and since these volunteers that came in got accepted, the law required them to be treated like a mandatory, required them to get an individual rate, got an individual rate, then the statute says everybody who gets an individual rate gets mixed in the mix for the all others rate. You have to tell me where there's ambiguity because I realize there's a policy argument supporting the regulation. That is to avoid jimmying the system. But that's not expressed in the statute. That's expressed in a regulation where Commerce decided that they simply wanted to always exclude individually established rates for volunteers. How I would approach the question would be to say, again, the first question Chevron Step 1 is, has Congress spoken on the precise issue? And the precise issue that the appellants raise here is, are voluntary respondent rates unambiguously required to be included in the calculation of the all others rate? And we know by the mandatory respondent statute that the mandatory respondent rates must be, they shall be. But the statute that refers to how Commerce is to treat voluntary respondents is silent on the issue as to whether Commerce is required to include that. So there's at least some ambiguity in the statutory scheme as a whole as to whether Congress intended the voluntary response rates to be included in the all others rate. And if you see at least that Congress hasn't spoken precisely to the issue, whether or not, when we look at the statute as a whole rather than focusing solely on those two words, individually investigated, then we believe that the answer is no. If Congress writes a law that has a term that is clear in its meaning, you define, you know what the term is, then you come along later to ask whether X falls within that definition or not. I mean, this notion that because Congress hasn't expressly addressed a question to me is circular because if the statute is clear, if there's no ambiguity, then there's no question. And we believe that the statutory scheme as a whole isn't unambiguous on this point. Is that because you're looking at the statute? I mean, there's two ways you can look at it. Chevron says that you have to look and see whether Congress has directly spoken to the precise question at issue. Correct. And it's not whether the term individually investigated is ambiguous. The question under Chevron is whether Congress has spoken to the precise question at issue. And the precise question at issue here is whether the rates established for a voluntary respondent should be included in, it has to be included in the all other rate. Isn't that the precise question? That's the precise question that's presented here. And our position is that nowhere in the statute is that precise question answered. And to the extent that Congress has spoken at all, Congress has said mandatory rates must be included and it was silent as to whether voluntary rates were to be included. That creates the ambiguity or at least indicates that Congress left it to Commerce to more fully develop how that was to be calculated. Let me ask you this. When Congress adopted the Statement of Administrative Action that's cited, it was aware that Commerce used this type of procedure or rather that it had different ways of calculating the all other rate. Is that correct? Right, I think that's correct. I don't think that Congress had an intent on that purpose because Congress left it to Commerce as the master of the trade law to develop these methods for determining the rates. And to the extent that there was an indication as the regulatory history points out, there was at least some indication that there was an intention that voluntary respondent rates be on sort of a parallel proceeding to the investigation in which the mandatory respondent... Legislative history of the statute or of the regulation? I'm talking about the regulation. Well, you used the word non-statute. I mean, let's be clear. We know what's in the regulation. I mean, I would have been helped if there was something in the legislative history of the statute, but I couldn't find anything. Your argument, I think, hinges on the notion that mandatories have to be included in a calculation of the all others rate, right? That is... You're saying that's clear. That's clear. So let me ask you this question. Does the statute provide for the inclusion in the all others rate of an uncooperative mandatory who gets an AFA rate? Is that included? It is as an exception. So the all others rate statute provides... The general rule is that you take the weighted average of the rates calculated for the mandatories and you exclude any rates that are calculated for zero de minimis or total AFA. But if that is all that commerce has, then you go to the exception in part two, which says that commerce may use any reasonable method, including using those rates. So there... Isn't that the ambiguity there? I mean, here you have a situation where you have... Clearly the statute refers to the mandatory respondents. They're the ones that are picked to participate or to be investigated. And the statute directs you that when all of the mandatory respondents are de minimis or all other rates, then the exception applies. But the exception that permits commerce to use any reasonable method to calculate the... And that's where the regulation comes into play. Well, the regulation comes into play because the regulation specifically says commerce will not use voluntary rates in the calculation of the all others rates. So that's where the regulation comes in. I think what the appellants here want to argue is that, you know, if you include the voluntary rates and you exclude the mandatory rates, then all of a sudden you have a very different... This is a case of first impression, isn't it? I couldn't find this regulation ever being discussed in any of our precedent, even in the Court of National Trade precedent. I think this is... There's some evidence of irregular application by commerce in the past, right? There's one... Administrative proceeding. Right. So, again, our position is that the statute creates an ambiguity. Given Chevron Step 2, you go to whether commerce's regulation is a reasonable filling of that gap. As our brief points out, we believe there's commerce... But if a voluntary respondent is included in the system, the law requires that person to get an individual rate, correct? If a party is selected as a voluntary respondent, then commerce will calculate a rate for that importer or exporter or producer. I'm just looking at the statute that says that they're going to determine an individual rate for each exporter individually investigated, right? And then everybody else gets an all-others rate. And in this case, the two volunteers were given a rate, so they weren't given an all-others rate. I think the way to look at that is that particular statute... The two volunteers, why did they get their individual rate? The voluntary respondents got their own rate because they asked commerce to volunteer, to participate, and to agree to be examined. They were individually investigated. I think in a colloquial sense, yes, but not as commerce has defined when we're talking about an all-others rate, how to calculate an all-others rate. Were they examined? Yes. Did they obtain a rate specific to that party? Yes. But in terms of whether that rate should be included in the calculation of the all-others rate, Congress did not speak precisely to that issue. When there's this large a number of manufacturers and importers, are they all identified and given notice that this investigation is proceeding and given an opportunity to come forward? Yes. All 100 of them? Yes. They were served with notice. Commerce, in this situation, because there were hundreds, could only select three as mandatories, and only two came forward requesting voluntary treatment. And the practice is when you select the mandatories, you're trying to capture as much of the market as possible, right? As much of the export market. The statute provides two different ways for commerce. When commerce can't examine all, commerce can either select the parties which represent the largest volume of exports, or it can do a statistically valid sample. So commerce has the discretion to choose one or the other. And in this case, commerce selected the three representing the vast majority of the exports of this product into this country. Thank you. Any more questions for the President? Any more questions? Thank you, Your Honor. Mr. Leonard. I'd like to add a word to Judge Clevenger's question about the statutory language in 1671D, little c, one, big V, little I, big I. And that reads, that commerce must determine an individual countervailable subsidy rate for each exporter and producer individually investigated, and an estimated all others rate for all exporters and producers not individually investigated. So it sets up a binary system. The key here is that Congress identified that what is included in the universe, or in the subset of exporters and producers individually investigated, are those for whom there has been an individual countervailable subsidy rate determined. And this is precisely what Congress set forth in 1677F1, little e, two, big A, for mandatory respondents that are required to establish an individual countervailable subsidy rate. But also in 1677MA, Congress also stated that commerce must determine an individual countervailable subsidy rate for voluntary respondents. I'd also like to address a question of Judge Reyna. You mentioned earlier that whether a voluntary respondent rate has to be included in the all others rate. And we would point to the exception, which states that commerce cannot use the exception if the rates of, or until the rates of all exporters and producers individually investigated are zero to minimus and based entirely upon adverse facts available. So if you have a situation where you have one voluntary respondent, everybody else chooses not to appear, mandatory respondents choose not to cooperate, and that one voluntary respondent has a rate of 4%, then you're saying that commerce must apply that 4% as the all other rate to all the companies other than the mandatory respondents. Yes, that's right, because the exception prevents commerce from using the exception unless the rates of all exporters and producers individually investigated are zero to minimus or based entirely upon adverse facts available. So in this context, if there is a calculated rate for a voluntary respondent that's available, then commerce cannot go to the exception. And with that, if there are no further questions. No questions. Thank you. Thank you. Thank you.